**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KIMBERLY L. BARNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-224** |
| | ) | |
| **CAROLYN W. COLVIN,[1] ACTING** | ) | **Judge Maurice B. Cohill** |
| **COMMISSIONER OF SOCIAL** | ) | **Magistrate Judge Susan Baxter** |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Defendant's motion for summary judgment (*ECF No. 14*) be denied, and that the Plaintiff's motion for summary judgment (*ECF No. 12*) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the decision of the Commissioner of Social Security ("Commissioner"), and a remand for further proceedings.

**II.    REPORT**

**A.    INTRODUCTION**

Plaintiff Kimberly L. Barnett ("Barnett") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f].  The matter is presently before the Court on

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue.  Social Security History-Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (as visited on September 24, 2013).  Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 12 & 14). For the reasons that follow, it is recommended that the Commissioner's decision be vacated, and that the case be remanded for further consideration of Barnett's application for SSI benefits.

### B. PROCEDURAL HISTORY

Barnett protectively applied for SSI benefits on May 3, 2010, alleging the existence of a statutory disability beginning on that date. (R. at 103, 130). The application was administratively denied on June 17, 2010. (R. at 67). Barnett responded on June 25, 2010, by filing a timely request for an administrative hearing. (R. at 72-74). On March 31, 2011, a hearing was held before Administrative Law Judge ("ALJ") Tom Duann. (R. at 44). Barnett, who was represented by counsel, appeared and testified in Erie, Pennsylvania. (R. at 48-61). Linda Fernandez Augins ("Augins"), an impartial vocational expert, also testified at the hearing. (R. at 61-64). The ALJ presided over the hearing from Norfolk, Virginia, by means of a video-conferencing apparatus. (R. at 31, 46). In a decision dated April 7, 2011, the ALJ determined that Barnett was not "disabled" within the meaning of the Act. (R. at 28-39).

On April 18, 2011, Barnett sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 25-26). The Appeals Council denied the request for review on July 26, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Barnett commenced this action on September 24, 2012, seeking judicial review of the Commissioner's decision. (ECF No. 1). Barnett and the Commissioner filed motions for summary judgment on February 27, 2013, and April 10, 2013, respectively. (ECF Nos. 12 & 14). Those motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

2

C.    STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether

the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## D.     THE ALJ'S DECISION

In his decision, the ALJ determined that Barnett had not engaged in substantial gainful activity subsequent to her application date. (R. at 33). Barnett was found to be suffering from degenerative disc disease of the spine, depression and anxiety. (R. at 33). These impairments were deemed to be "severe" under the Commissioner's regulations. (R. at 33); 20 C.F.R. §§

416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Barnett's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 33-34).

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Barnett's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) that requires only occasional climbing of ramps, stairs, ropes, ladders, and scaffolds, frequent bending, and occasional stooping, kneeling, crouching, and crawling. The claimant can perform simple, repetitive work with no more than occasional interaction with the public.

(R. at 35). Barnett had "past relevant work"[3] experience as an arcade attendant. (R. at 61). Augins classified that position as an "unskilled"[4] job at the "light"[5] level of exertion. (R. at 62). She testified that an individual with the limitations contained in the ALJ's residual functional capacity assessment would not be able to maintain a job as an arcade attendant. (R. at 62). Therefore, it was determined that Barnett could not return to her past relevant work. (R. at 37).

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Barnett was born on February 27, 1981, making her twenty-nine years old on her application date and thirty years old on the date of the ALJ's decision.  (R. at 48).  She was classified as a "younger person" under the Commissioner's regulations.  20 C.F.R. § 416.963(c).  She had the equivalent of a high school education[6] and an ability to communicate in English.  (R. at 50, 134, 136); 20 C.F.R. § 416.964(b)(4)-(5).  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Barnett could work as a small parts assembler or garment sorter.  (R. at 38).  Augins' testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[7]  (R. at 62).

### E.    DISCUSSION

Exhibits 1A through 16F were admitted into evidence at the hearing.  (R. at 47).  Barnett's counsel advised the ALJ that no additional documentary evidence was being sought.  (R. at 47).  The ALJ rendered his decision based on the documentary and testimonial evidence received at the hearing.  (R. at 28-39, 64).  The Commissioner's regulations permit a claimant to present "new and material" evidence to the Appeals Council in support of a request for review.  20 C.F.R. § 416.1470(b).  The Appeals Council must consider such evidence in deciding whether to review the decision denying the claimant's application for benefits.  *Id.*  In connection with her request for review, Barnett presented the Appeals Council with documentary evidence that had never been submitted to the ALJ.  (R. at 439-478).  That documentary evidence is contained within Exhibits C17F through C21F.  (R. at 4-5).  The Appeals Council ultimately denied Barnett's request for review.  (R. at 1).

---

[6] Barnett obtained her General Educational Development ("GED") certification in 2007.  (R. at 50, 136, 411).
[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

The Act authorizes judicial review only over a "final decision" of the Commissioner. *Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). A federal court has no jurisdiction to entertain a challenge to a decision by the Appeals Council denying a claimant's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). When the Appeals Council denied Barnett's request for review, the ALJ's decision became the Commissioner's "final decision" in this case. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The standards governing the propriety of a sentence-six remand are firmly established. *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Barnett does not move for a remand based on documentary evidence found in Exhibits C17F through C21F. (ECF No. 13). Since Barnett is not seeking a sentence-six remand, the Court's review is limited to the evidence that was before the ALJ at the time of his decision. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011).

Barnett underwent a discectomy in September 2003. (R. at 216, 318). She visited Dr. Michael Spellacy on January 18, 2010, complaining of a severe, sharp pain in her lower back. (R. at 326). The pain, which radiated into her left leg and foot, was described as a "constant sensation." (R. at 326). At that time, Barnett was still able to sit and ambulate with comfort. (R. at 326). A magnetic resonance imaging ("MRI") scan performed on February 5, 2010, revealed that Barnett had degenerative disc disease in her lumbar spine. (R. at 308-309, 366). Less than

8

two months later, Dr. Spellacy reported that Barnett would be incapacitated until April 22, 2010. (R. at 352-354). Dr. Spellacy further stated that, in the long term, Barnett's ability to work would need to be ascertained by her treating neurosurgeon, Dr. Daniel Muccio. (R. at 353-354).

On June 25, 2010, Dr. Spellacy evaluated Barnett for anxiety. (R. at 315-317). Barnett informed Dr. Spellacy that she was pregnant. (R. at 315-316). She complained of social anxiety, a racing mind, shortness of breath, chest tightness, panic attacks and hot flashes. (R. at 315). It was recommended that Barnett begin a regular exercise regimen and attend counseling sessions. (R. at 316). One month later, she was treated for a urinary tract infection. (R. at 313).

Dr. Spellacy referred Barnett to Safe Harbor Behavioral Health ("Safe Harbor") for mental health treatment. (R. at 417). During a treatment session conducted on July 6, 2010, Barnett complained of an inability to focus and a poor memory. (R. at 417). She also stated that she frequently avoided contact with others. (R. at 417). Treatment records from Safe Harbor suggest that Dr. Spellacy wanted Barnett to undergo mental health therapy before taking psychiatric medications. (R. at 412).

Dr. Muccio apparently declined to treat Barnett while she was pregnant. (R. at 310). In a letter dated August 3, 2010, Dr. Spellacy stated as follows:

> The above patient has Lumbago and Lumbar Radiculopathy. With her current symptoms and the fact that she is 18 weeks pregnant, she will be unable to undergo any aggressive type treatment to the back such as surgery or injections. At this time, we will try some Physical Therapy to decrease her symptoms. At this time, I would consider her disabled and foresee this continuing until after delivery and during the first 6-12 months post delivery. Anything we can do to help get her disability on a temporary basis would be helpful.

(R. at 360). Dr. Spellacy reiterated his views about Barnett's condition in a subsequent letter dated August 11, 2010. (R. at 359, 405). In his second letter, Dr. Spellacy explained that his

attempt to procure SSI benefits for Barnett was "based on [a] diagnosis of lumbago and lumbar radiculopathy and symptoms being aggravated by pregnancy." (R. at 359, 405).

Barnett continued to attend counseling sessions at Safe Harbor during the fall of 2010. (R. at 409-411, 423-428). Seroquel was prescribed to control her anxiety and depression. (R. at 424). Meanwhile, Barnett's obstetrician/gynecologist advised that her pregnancy was proceeding on a normal basis. (R. at 425). At some point in December 2010, Barnett stopped using Seroquel because she was afraid to take it with a medication prescribed by her obstetrician/gynecologist. (R. at 421). Barnett gave birth to a daughter on December 28, 2010. (R. at 421). The delivery was effectuated by means of a Caesarian section performed without complications. (R. at 421). It was later determined that Seroquel had caused Barnett to experience undesirable mood changes. (R. at 419). On February 28, 2011, she was given prescriptions for Prozac and Abilify. (R. at 420).

Dr. Spellacy detailed Barnett's physical abilities and limitations on a "lumbar spine impairment questionnaire" form dated March 3, 2011. (R. at 431-437). On the form, Dr. Spellacy reported that Barnett could not sit, stand or walk for a full hour during the course of an eight-hour workday. (R. at 434). He stated that she could not sit, stand or walk continuously, and that she frequently needed to change positions. (R. at 433). Dr. Spellacy indicated that Barnett could never lift or carry objects weighing more than ten pounds, and that she could lift or carry objects weighing ten pounds or less on only an occasional basis. (R. at 433). He asserted that she was incapable of pushing, pulling, kneeling, bending or stooping, and that she needed to avoid heights and temperature extremes. (R. at 436). Dr. Spellacy declared that Barnett was unable to perform the duties of even "low stress" jobs, since any amount of stress would aggravate her back pain. (R. at 435). He predicted that her impairments would necessitate more

than three absences per month if she were to be employed on a full-time basis. (R. at 436). Augins testified that no jobs existed in the national economy for an individual with the functional limitations described by Dr. Spellacy.[8] (R. at 63).

At the hearing, Barnett complained of persistent back pain, feet numbness and migraine headaches. (R. at 51). She testified that, on a bad day, she could not lift objects weighing more than four pounds. (R. at 52). Barnett asserted that she could not sit, stand or walk for more than ten minutes at a time, and that she frequently needed to lean on something while standing. (R. at 56-57). Describing her mental impairment as "social anxiety," Barnett testified that she did not like to be around others. (R. at 51). She also stated that her psychiatric medications sometimes made her dizzy. (R. at 58).

On June 16, 2010, a non-medical adjudicator determined that Barnett was physically capable of performing an unrestricted range of "light" work. (R. at 241-246). That determination resulted in the denial of Barnett's application for SSI benefits. (R. at 67). Under the Commissioner's regulations, an assessment completed by a non-medical adjudicator does not constitute "evidence" that should be weighed by an administrative law judge. 20 C.F.R. § 416.927(e)(1)(i). The ALJ correctly concluded that the adjudicator's earlier determination in Barnett's case was entitled to "no weight." (R. at 37).

In determining Barnett's residual functional capacity, the ALJ accorded only "slight weight" to Dr. Spellacy's opinion. (R. at 37). The ALJ stated that since Barnett had "exhibited normal muscle strength and good range of motion" during her "conservative course of treatment," Dr. Spellacy's assessment was "not consistent with the objective clinical findings."

---

[8] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117]. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

(R. at 37).  According to the ALJ, Barnett's back pain was adequately accommodated by the limitation restricting her to a range of "light" work activities involving only occasional postural maneuvers.  (R. at 37).

As the patient with a known treatment history, a claimant seeking benefits under the Act is in the best position to provide information about his or her own medical condition.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).  For this reason, the claimant bears the initial burden of producing evidence suggesting that his or her medically determinable impairments result in specific work-related limitations.  *Baker v. Astrue*, 617 F.Supp.2d 498, 510 (E.D.Ky. 2008).  In the absence of evidence establishing the claimant's *inability* to perform a work-related task, the Commissioner need not seek medical confirmation of the claimant's *ability* to perform that task.  *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 362 (3d Cir. 2011)(remarking that "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision").

The situation is different when a claimant produces medical evidence of specific functional limitations.  An administrative law judge may not draw "speculative inferences from medical reports" and "employ [his or] her own expertise against that of a physician who presents competent medical evidence."  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  An opinion expressed by a treating physician does not inevitably control the inquiry concerning the claimant's residual functional capacity.  *Brown v. Astrue*, 649 F.3d 193, 196, n. 1 (3d Cir. 2011).  Every medical opinion, regardless of its source, is entitled to some consideration.  *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992).  The probative force of any medical opinion can only be ascertained in relation to the evidentiary record as a whole.  *Miller v. Commissioner*

*of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). When conflicting medical opinions are voiced, the administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Nonetheless, an assessment submitted by a treating physician cannot be rejected solely on the basis of an administrative law judge's "own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). If the treating physician's opinion is deemed to be unreliable, the administrative law judge must "secure additional evidence from another physician." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

The United States Court of Appeals for the Third Circuit disfavors administrative decisions which reject assessments presented by treating physicians in favor of those submitted by non-examining consultants. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Where the treating physician's opinion is "internally contradictory," it may be outweighed by an opinion expressed by a non-examining consultant. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). In this case, however, the record did not contain an assessment from a medical consultant. (R. at 37). Dr. Spellacy's opinion was uncontradicted. The limitations identified by Dr. Spellacy would preclude an individual from maintaining a full-time job. (R. at 63). Since no physician opined that Barnett could perform the "light" work reflected in the ALJ's residual functional capacity assessment, the Commissioner's decision denying Barnett's application for benefits is not supported by substantial evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

The statutory provision authorizing the commencement of this action provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An immediate award of benefits is justified only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard is not satisfied in this case. Barnett's medical condition was never assessed by a consultative examiner or non-examining consultant. The ALJ was not required to accept Dr. Spellacy's opinion uncritically. *Brown*, 649 F.3d at 196-197. Even if Dr. Spellacy's opinion is deemed to be credible, it is not clear whether Barnett would be entitled to benefits. Dr. Spellacy opined in August 2010 that Barnett was temporarily disabled because of symptoms that could not be treated during her pregnancy. (R. at 359-360). His subsequent assessment of her abilities and limitations postdated her delivery date by only two months. (R. at 431-437). A claimant attempting to secure benefits under the Act must establish that both his or her medically determinable impairment (or combination of impairments) and his or her inability to work have lasted (or are expected to last) for the statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Unrelated impairments cannot be combined to satisfy the Act's twelve-month durational requirement. 20 C.F.R. § 416.922(a). If Barnett needed to avoid certain forms of treatment in order to ensure the welfare of her unborn child, she clearly had an "acceptable reason" for declining to adhere to her treatment regimen. 20 C.F.R. § 416.930(c). Nevertheless, it is not clear from the record whether Barnett's functional limitations were sufficiently severe to prevent her from engaging in substantial gainful activity for a full year. The presence of pain does not invariably preclude an individual from working. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986). Since several dispositive

questions remain unanswered, the proper remedy in this case is a remand for further proceedings rather than an immediate award of benefits. *Diaz*, 577 F.3d at 504-507.

### F. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion for summary judgment (*ECF No. 14*) be denied, and that Barnett's motion for summary judgment (*ECF No. 12*) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's "final decision," and a remand for further proceedings. It is further recommended that the Commissioner's decision be vacated, and that the case be remanded for further consideration of Barnett's application for SSI benefits. The Commissioner should be directed to "reopen and fully develop the record before rendering a ruling" on Barnett's claim. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).


<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge


cc:    All counsel of record

      Maurice B. Cohill
      United States District Judge